Field v. Winheim.

## Marshall Field, et al., v. Minna Winheim.

### Gen. No. 11,947.

1. TRIAL DE NOVO—*when should not be awarded.* A trial *de novo* should not be awarded where the Appellate Court reverses and remands a cause solely for the error of the trial judge in sustaining a motion in arrest of judgment.

2. NEGLIGENCE—*prima facie evidence of.* Proof of the happening of an accident unexplained makes a *prima facie* case of negligence where the apparatus involved is wholly under the control of the defendant carrier.

3. INSTRUCTIONS—*must be predicated upon the evidence.* Instructions which have no evidence to support their theories are erroneous.

4. INSTRUCTIONS—*must not take from jury the determination of issues of fact.* Instructions should not invade the province of the jury and direct them how they should find a particular fact in issue.

5. VERDICT—*when not excessive.* A verdict for $10,000 is not excessive where the plaintiff, a woman of the age of about twenty-two years, sustained a permanent injury to her ankle which rendered her a cripple.

Action on the case for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. EDWARD O. BROWN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1904. Affirmed. Opinion filed October 27, 1905.

**Statement by the Court.** This is an appeal from a judgment entered in an action on the case brought by appellee against appellants and the Crane Elevator Company in the Circuit Court of Cook County to recover for injuries alleged to have been sustained by the plaintiff through the falling of a passenger elevator which was operated by the defendants.

The evidence tended to show that on December 16, 1893, the plaintiff, then twenty-two years old, went with her sister to the retail store of appellants. Having made a purchase and taken luncheon in the tea-room, they took one of the passenger elevators to descend to the street level. The elevator fell from the third floor to the basement, and the plaintiff received among other hurts an injury to her left foot and ankle, from which she had not recovered at the time of the trial.

At the close of the plaintiff's evidence the court directed a verdict of not guilty as to the defendant the Crane Elevator Company, and the trial proceeded to a verdict July 8, 1901, against the other defendants, the appellants herein, for $10,000. A motion for a new trial was denied. Appellants then made a motion in arrest of judgment which was sustained September 21, 1901, and judgment was entered against the plaintiff. The plaintiff appealed to this court, and the judgment was reversed and the cause remanded. Whereupon the cause was re-docketed in the Circuit Court April 2, 1903. On June 17, 1904, on motion of the plaintiff, the Circuit Court entered a judgment on the verdict for $11,469, the amount of the verdict and interest, in favor of the plaintiff and against appellants, on the verdict which had been returned by the jury July 8, 1901. Thereupon this appeal was perfected.

WING & WING, and FRANK P. LEFFINGWELL, for appellants.

H. S. & F. S. OSBORNE, MUSGRAVE, VROMAN & LEE, and ROBERT F. PETTIBONE, for appellee.

MR. PRESIDING JUSTICE SMITH delivered the opinion of the court.

It is contended by appellants that the court below erred in sustaining the motion of the plaintiff for a judgment and in rendering a judgment June 17, 1904, in her favor on the verdict which had been rendered July 8, 1901, for the reason that the remanding order of this court made February 27, 1903, required a new trial of the case.

Chronologically stated the steps taken in the case, after the verdict, were as follows:

1. Defendants' motion for a new trial was denied July 16, 1901.

2. Defendants entered their motion in arrest of judgment July 16, 1901.

3. The court sustained defendants' motion in arrest of judgment on the verdict September 21, 1901.

4. Amendment of declaration was filed by leave of court October 12, 1901.

5. Plaintiff's motion for judgment on the verdict was denied October 12, 1901.

6. Defendants' pleas to plaintiff's amended declaration, not guilty and special plea of Statute of Limitations were filed October 21, 1901.

7. A demurrer to special plea of Statute of Limitations was filed by plaintiff January 3, 1902.

8. Order overruling demurrer was entered January 11, 1902, and plaintiff elected to stand by her demurrer January 14, 1902.

9. Judgment for defendants with costs was entered January 14, 1902.

10. Plaintiff appealed to this court.

11. Order of this court February 27, 1903, reversing judgment and remanding the case.

12. Mandate filed in Circuit Court March 23, 1903.

13. Order of Circuit Court entered June 17, 1904, granting leave to plaintiff to withdraw amendments to her declaration filed October 12, 1901, after verdict, and that declaration filed April 3, 1897, stand as her declaration.

14. Judgment of Circuit Court on verdict of July 8, 1901, from which this appeal is perfected.

On the former appeal to this court the only questions presented and considered by this court were the errors committed after verdict, namely: the granting of defendants' motion in arrest of judgment, and the proceedings subsequent thereto, including the overruling of plaintiff's demurrer to defendants' plea of the Statute of Limitations. This court reversed the judgment, holding that the declaration was sufficient to support a judgment on the verdict, and that the Circuit Court erred in arresting the judgment, and in overruling plaintiff's demurrer to the plea of the Statute of Limitations. Winheim v. Field et al., 107 Ill. App. 145.

After the case was re-docketed in the Circuit Court, the plaintiff by leave of court withdrew her amendments to the declaration filed after verdict, thus leaving the case in precisely the same condition as to the pleadings that existed after the verdict, and after defendants' motion for a new trial had been denied. Thereupon plaintiff moved for and obtained judgment on the verdict.

On the former appeal no question was presented to this court or considered by it, which arose out of any matter or thing occurring prior to the verdict or which in any way affected the verdict. The judgment then reversed was in no way based upon the verdict, nor did it have any relation to the verdict.

In Gage v. The People, 163 Ill. 39, it was held that the Supreme Court will not award a new trial, upon reversing a judgment when no error appears prior to the attempted entry of such judgment, but will direct the trial court to enter a proper judgment. It was there said: "In this state of the record, no error appearing prior to the entry of the judgment, the practice in this court is firmly established, even in criminal cases, (see Wallace v. People, 159 Ill. 446, and cases there cited) not to send the case back to the trial court for a *venire facias de novo*, but simply to enter a proper judgment in the case. Martin v. Barnhardt,

Field v. Winheim.

39 Ill. 9; McNulta v. Ensch, 134 id. 46; Meyer v. Village of Teutopolis, 131 id. 552."

In Missouri, etc., Company v. Clark, 60 Neb. 406, it was said: "Where a judgment is reversed for an error occurring at the trial, the cause must necessarily be tried again. There is no other way to cure the mistake.   But, if the error upon which a judgment of reversal is based intervened after the trial, there is no good reason for a re-trial of the issues.   *   *   *   When the judgment of a trial court has been reversed in an error proceeding, the court should retrace its steps to the point where the first material error occurred.   It should put the litigants back where they were when the initial mistake was committed.   Justice requires that much, but it does not require more."

This practice is supported in Relfe v. Commercial Ins. Co., 5 Mo. App. 579; Schley v. Schofield, 61 Ga. 528; Nelson v. Hubbard, 13 Ark. 253; Kurtz v. St. Paul, etc., Co., 65 Minn. 60; City Bank v. Radtke, 92 Ia. 207, and other cases.

The proposition that where a judgment is reversed and the cause is remanded for error occurring before or on the trial of the cause, there should be a trial *de novo,* cannot be questioned, for the effect of such a judgment is to grant a new trial.   But we hold, upon the authorities cited, that where the errors complained of occurred subsequent to the trial, and where there is a verdict sufficient to warrant a judgment, the judgment of reversal should not be construed as granting a new trial, but as putting the parties back to the stage of the case where the error occurred for which the judgment was reversed.

The evidence in the record upon the question of the defendant's negligence is so voluminous that it seems impossible to discuss it in detail without extending this opinion to very great length.   We cannot therefore give anything more than the most general statement of its character.

The elevator in question, with other elevators in the same building, was built and installed by the Crane Elevator Company for appellants.   The flange which broke and let

the car fall was purchased by the Crane Company from the Chicago Foundry Company. Both of these companies had good reputations as manufacturers. Much of the evidence on the part of defendants was directed to the tests that were made of the flange before the elevator was installed by the Crane Company. It is an undisputed fact in the case that it was the breaking of the flange which caused the fall of the elevator. The flange was examined in the shop of the Crane Elevator Company after the accident. It was found that a part of the break had a dark shade, darker than the other part, indicating that it had been broken or cracked some time before the accident. The discolored part of the break extended about an inch down the threads and an inch towards the inside. The flange was cast of "semi-steel," as it is called, which had been used for elevator construction but a short time before the elevator in question was installed. The testimony of the experts tended to show that in appliances of this kind the metal becomes "tired" and frequently gives way, or develops defects, after use. The testimony shows that the safety device did not work for some cause. In the opinion of some of the witnesses this device which was designed to clutch the steel guides in the elevator shaft and thus prevent the car from falling whenever the motion of the car exceeded a certain rate, did not operate because the car in falling did not exceed the rate at which the device was set to operate. There was considerable testimony as to what kind of tests, and how often they should be applied to these devices. It does not appear, however, that the defendants tested the safety device on the elevator in question at any time during the five months the elevator had been in use.

Upon a review of all the evidence and applying the rule of diligence and care applicable to operators of passenger elevators, as laid down in Springer v. Ford, 189 Ill. 430, we cannot say that the evidence in the case does not show negligence on the part of the defendants in operating the elevator. Proof of happening of the accident unexplained where the apparatus is wholly under the control of the car-

Field v. Winheim.

rier makes a *prima facie* case of negligence, N. Y., C. & St. L. R. R. Co. v. Blumenthal, 160 Ill. 40; and it was a question for the jury to determine whether the evidence of the defendants rebutted the case thus made. We see no clear ground in the evidence for interfering with the verdict of the jury.

We do not think the court erred in sustaining the demurrer of the plaintiff to the plea of the Statutes of Limitations filed April 7, 1897, to the additional amended counts of the declaration for the reasons expressed in North Chicago Rolling Mill Co. v. Monka, 107 Ill. 340; Blanchard v. L. S. & M. S. Ry. Co., 126 Ill. 416; Swift & Co. v. Madden, 165 Ill. 41; Chicago City Ry. Co. v. Hackendahl, 188 Ill. 300.

We are unable to see any material error in instruction numbered 3, given by the court, at the instance of appellee. In view of the rule as to the degree of care and diligence to be exercised by operators of passenger elevators above referred to, we think the instruction is clearly within the law and that appellants suffered no injury from the giving of the instruction.

Error is assigned upon the refusal of the court to give instruction numbered 7, requested by defendants. The instruction is as follows :

" The court instructs you that even though you believe from the evidence that the semi-steel flange mentioned in evidence was put in use without having been properly tested, and that the breaking of said flange was the immediate cause of the accident, yet if you further believe from the evidence that the members of the firm of Marshall Field & Co. did not know, and by the exercise of the highest skill and diligence reasonably practicable could not have ascertained the unsound or defective condition of said semi-steel flange, then it is your duty under the law to find the members of said firm and each of them not guilty."

We think the court properly refused to give this instruction. There is no evidence to base the instruction upon; and if there had been, the instruction would have withdrawn the question of defendants' negligence from the

jury. Furthermore, if it be conceded that there was evidence upon which to base the instruction and that it is sound in law, the refusal to give it was not error, for the reason that the substance of it was embodied in instructions numbered 6, 8, 11, 13, 18 and 20.

We think there was evidence tending to support the third additional count of the declaration, and therefore that the refusal to give instruction numbered 24 withdrawing this count of the declaration from the jury was proper. It made no difference legally whether defendants themselves furnished unsound and defective materials in the construction of the elevator, or whether that was done by their agent, the contractor who constructed the elevator for them.

We have examined the evidence carefully upon the question of the amount of the verdict. The evidence shows that the plaintiff suffered very serious injuries. The accident happened on December 16, 1893. From that time until the trial in July, 1901, a period of seven and one-half years, she had never been able to walk without the use of a crutch. From the testimony of two physicians it appears that the ligaments which hold the bones of the left foot in position were torn by the violence of the fall. The evidence shows that she has suffered much pain as a result of the injury and that the use of the foot produces pain; that the injury is permanent. The foot will never be as good as it was before the accident. In view of the evidence we cannot say that the verdict is excessive.

Finding no error in the record, the judgment is affirmed.

*Affirmed.*

Mr. Justice BAKER took no part in the decision.